Bayless *v.* Bayless.

# BAYLESS *v.* BAYLESS.

1. WILL CONSTRUED. A testator drafted the main body of his will in 1857, but did not then sign it. In this, among other bequests, he devised a tract of 300 acres to his son L., with a reservation of 40 acres to his wife during life, or until her voluntary surrender of it. This bequest was charged with fifteen hundred dollars, one thousand to go to his son B., to equalize the respective shares of the two, and five hundred to his daughter E. Afterward, L. becoming helpless, the testator added a clause to the will, in which, after reciting the condition of his son, and expressing a desire to relieve him from the necessity of raising money to pay off the charges upon his share, he gives him 240 of the 300 acres originally given, and devises the remainder to his daughter R., chargeable, however, with five hundred dollars to be equally divided between two other daughters,—no allusion being made to the charge upon L.'s share in the will as first drawn. After substituting another in the place of L. as one of his executors, he executes the will.

*Held,* that it was the intention of the testator, in view of L.'s infirmities, to exonerate the land devised to him from all charges imposed upon it by the original draft, as well in favor of B. as the daughters.

2. SAME. A clause in the will provides: "That all my personalty, railroad stock, etc., not before specially bequeathed, shall be equally divided among my six children."

*Held,* that to give effect to this provision, the railroad stock should be divided among them in kind as far as practicable; so much as is incapable of division in this way, to be sold, and the proceeds divided as indicated.

### FROM WASHINGTON.

Appeal from the Chancery Court. H. H. SMITH, Chancellor.

No record found.

FREEMAN, J., delivered the opinion of the court.

Bayless *v.* Bayless.

The question presented in this case is, the proper construction of the will of John Bayless, Sr.

The main body of the will seems to have been drawn in 1857, as appears by a formal conclusion and date found in it.    This instrument, however, was not signed by the testator or finally published.    Owing to a change in the situation of one of his sons, the testator adds the following:  " Whereas, since writing the above and foregoing draft, my son Luke Bayless has become seriously diseased, and is apprehended will be unable to prosecute the business of life, in consequence whereof I will and direct that said Luke shall have two hundred and forty acres of the tract of land on which I live, that is to say, two hundred and forty of the three hundred acres first hereinbefore bequeathed, to be in all respects conformable to the description before expressed, save in quantity ;  and it is my will that Polly Ann Withers have the sixty acres, or whatever it may be, that is taken off Luke's first bequest of three hundred acres.    My object in making the change is to exempt my son Luke in his affliction from being compelled to raise money which he might be unable to do;  but that Polly Ann shall pay to her sisters, Eliza Cox and Adeline Simpson, two hundred and fifty dollars to each, for the additional quantity of land thus bequeathed, the same to be paid her sisters as in the former bequest."  The testator then substitutes Michael Withers, in the stead of his afflicted son, to be executor with his other son Barton, and regularly executes the will.

The other clauses of the will necessary to be no-

ticed in order to present the question raised, are substantially as follows:

He gives to Barton Bayless, in confirmation of a previous deed, the tract of land on which he (Barton) then lived, on the Nolla Chucky river, including the grist-mill, supposed to contain 150 acres. This, he says, with the distributive share of the personalty given in after-part of the will, is in full of his distributive share of my estate.

In item 6th is found the original purpose of the testator towards his son, Luke Bayless, as follows: "I give and bequeath to my son Luke Bayless, his heirs and assigns, three hundred acres of the lower part of my farm on which I now reside"—that is, three hundred acres to include the reservation of forty acres, with the buildings, given in previous part of the will to his wife Sarah Bayless. He then provides that Luke is not to interfere with this forty acres during the life of his said wife, or until her voluntary surrender of the same. He then gives directions as to how this three hundred acres is to be run off to Luke. He then concludes with the following: "This bequest is chargeable with the sum of fifteen hundred dollars, which I esteem the 300 acres to exceed in value the land bequeathed to my son Barton,—$1,000 of the $1,500 to be paid by the said Luke to Barton, and $500 to Eliza Cox, payable one-half to each in two years after my demise, and the other half in three years."

The main question presented is, as to whether the last or added clause of the will relieves Luke Bayless

of the charge of $1,000 in favor of his brother Barton. We think it clear that this was the leading object and purpose of the change made in the will. The charge of $1,500 was on account of the fact that Luke's 300 acres was esteemed more valuable by this sum than what was given to Barton. The change was made, reducing the amount of land from 300 to 240 acres, so as to remove the inequality in the value of the lands as between the two brothers, and the purpose was distinctly stated to exempt his son Luke, "in his affliction, from being compelled to raise money, which he might be unable to do." Now, if the money was still a charge on Luke's share, he has less land by sixty acres than before given, and he is still not exempt from raising money, as his father desired. Such a construction would clearly defeat, not carry out, the intention of the testator. This is further shown by the fact that his daughter Polly Ann Withers has this sixty acres of land taken from Luke added to her share, and she is charged with the payment of $500 to her two sisters, Mrs. Cox and Mrs. Simpson—to each $250—thus relieving Luke entirely of the burden of raising any money to meet charges on his share.

It is urged that Barton's share of land is not increased by this change, and that he loses the $1,000. This may be true, but such is the only construction the language of the testator fairly admits of, and the affliction of his son may well have moved his father to favor him in the distribution of his property as between him and his other brother. At any rate, he

has clearly expressed a purpose to exempt him from being compelled to raise money to meet these charges, and we defeat that intention if we shall so construe his will as that the charge shall still remain, and he be compelled to raise $1,000 for his brother. Such was not the purpose of the testator, and his will must control.

The other question presented is, as to whether the railroad stock owned by the testator shall be divided in kind, or sold and proceeds divided among the children. The language of the will is, "that all my personalty, cash on hand, railroad stock, and proceeds of everything not before specially bequeathed, shall be equally divided amongst my six children," &c. The language indicates clearly that the stock is to be divided in kind. As it is so expressed, it should be done, unless it should be found impossible to do so, which we cannot see to be the case, nor well how it can so happen. If it should so happen, however, from the character or amount of the shares, a division can be had of such an amount as can be divided, and the balance may be sold and proceeds divided, so as to reach as nearly as possible the intention of the testator.

A decree will be drawn in accordance with this opinion, Barton Bayless paying costs of this court and court below up to the present time. The case will be remanded for the other purposes of the bill, and the costs in the future will be adjudged by the Chancellor.